*Martin* vs. *Greene.*

### MARTIN vs. GREENE.

1. An objection to the jurisdiction of a court of equity cannot be made after answer. It must be made by demurrer.

2. When an answer does not positively, clearly and precisely deny an allegation in a bill, it is not necessary that it should be contradicted by two witnesses. So, also, where the answer be not sufficiently distinct upon points as to which defendant is presumed to be well informed.

3. The captain of a steamboat, in making a purchase of the interest of one of the owners, an illiterate man, unable to read or write, being called upon by the owner to state the condition of the affairs of the boat, its indebtedness, &c., makes statements as to such matters calculated to deceive the owner—conceals the amount of profits and money on hand, but refers the owner to the clerk—and thus effects a purchase of such owner's interest, will be held liable for the share of the profits of such boat, up to the time of the sale, going to such owner.

### APPEAL from Platte Circuit Court.

WILSON & REES, *for Appellant.*

LEONARD & BAY, *for Appellee, insist:*

1. The motion to dismiss the bill was properly overruled. The appellant, Martin, as master of the steamboat, was the confidential agent of the owners. (3 Kent's Com., 161.) The appellee, Greene, being one of the owners of the boat, had a right to file a bill of discovery against Martin for an account of any property of his principal obtained by any improper means; and the court of chancery having jurisdiction for the discovery, will, to avoid multiplicity of writs, proceed to administer the proper relief. 1 Story's Eq., 468–9, 470.

Besides, the conduct of Martin, in making false representations as to the affairs and concerns of the boat, was a gross breach of trust, and a fraud upon his principal. Such acts will always entitle the injured party to relief in equity. 1 Story's Eq., 325–6, 3rd edition.

2. The motion to dismiss the bill for want of jurisdiction, was made too late. The defendant

should have demurred to the bill; by the answer, he has put himself upon the merits. 4 J. Ch. R., 290.

3. It is admitted that where the answer of a defendant is "positively, clearly and precisely" responsive to the matter stated in the bill, it is to be taken as true, unless it be contradicted by two witnesses, or by one witness and corroborating circumstances. But the answer of the defendant in this case is evasive and uncertain. He does not deny some of the material allegations in the bill; others he denies in a very evasive manner. His answer shows that he endeavored to leave false impressions upon the mind of the complainant as to the true condition of the affairs of the boat. Roundtree vs. Gordon, 8 Mo. R., 24-5; Greenleaf on Ev., 297-8; 1 Phillips on Ev., 154-5.

4. The complainant was entitled to his share of the earnings of the boat, whether the amount was known at the time of the sale of his interest in the boat or not. He only sold his share of the boat, and not his share of the earnings. The answer does not deny this, but only denies that the defendant knew what the amount of the earnings was at the time of the sale, and calls upon the complainant for strict proof of the amount. This proof is furnished by the answer of the clerk. An answer professing a want of knowledge of the fact, only puts the complainant to prove it by one witness, or what is equivalent. Cow. & Hill's notes to Phillips on Ev., part 1st, page 287, note 294.

The defendant must state positively what he must have knowledge of, or the ordinary proof by one witness will overcome the answer; ib. The defendant, from his situation as master of the boat, must have had knowledge of the condition of the affairs of the boat. At all events, it was his duty to inform himself of such matters.

NAPTON, J., *delivered the opinion of the Court.*

This was a proceeding on the chancery side of the Circuit Court of Platte county. The bill represented that the complainant, on the 15th June, 1843, was the owner of two-fourteenths of the steamboat "Edna," and that one Frederick Marshall (whose interest he had purchased) owned one-fourteenth; that he was entitled, therefore, at that time, to three-fourteenths of the profits made by said boat, which amounted to $1750 78. That the defendant was master of said boat at that time, and had been several years previously, and as such, was well acquainted with, the condition of the boat and her liabilities and profits, and well knew that the nett proceeds then on hand amounted to the sum before mentioned; that the complainant, anxious to learn the true condition of the affairs of said boat, about the time above specified, called on said Martin, when the latter fraudulently concealed the same from him, and represented that said boat was greatly indebted, and without any means of payment, and that there was no cash on hand, and at the same time proposed purchasing complainant's and Marshall's interest. That the complainant, confiding in these representations of his agent, the said defendant, sold to the said Martin his interest and the interest of the said Marshall, at a very reduced price, to-wit: for $575, and for the interest of

said Martin in some lots in Platte City.   That by virtue of said sale, the defendant retained all the share of the $1750 75, which was then the clear profit of the boat, which the complainant and said Marshall were at that date entitled to.   The bill proceeds to charge that the defendant, for the purpose of defrauding the complainant, had requested the clerk of the boat to "*leg for him*," and to help him in lying; that defendant also told other and different persons, with the same fraudulent purpose, that said boat had on board no more money than would pay its debts, well knowing the same to be false.   The complainant charges that these facts are in the knowledge of defendant, and therefore prays that he may be compelled to answer, and that he be decreed to refund the three-four-teenths of the profits, &c., and for general relief.

The answer of Martin admits the interest of complainant, and the sale, &c., but denies that at the date aforesaid (15th June, 1843) the boat was out of debt, but avers that it was in debt to a considerable amount, having been sued for damages, and threatened with suits—though defendant does not undertake to say how much indebtedness existed.— The defendant denies that $1750 78 was on hand, but does not know what amount of cash there would have been on hand if all debts had been settled.   He admits that he was captain or master of said boat, and was as well and accurately informed of the true condition of the affairs of said boat as men acting in the capacity of captain or master usually are, but that he did not know or believe that there was or would be in cash on hand the said sum of $1750 78, but that the same would fall greatly below that estimate.   He admits that he was called upon by com-plainant for a disclosure of the true condition of the boat, at the time specified in the bill, but avers that he referred him to the clerk and the books of the boat, and requested the clerk to furnish him with full in-formation, and that the clerk afterwards told him he had so done.   He denies all fraud.   He avers that the town lots spoken of in the trade be-tween complainant and him, were estimated at $2000.   He denies that he told the clerk to " leg for him," &c., but says he told the clerk that if he would help, that a trade might be effected between him and Greene, but he was more anxious to sell than to buy.   He declares that com-plainant was anxious to sell, and accordingly took a trip down the Mis-souri with him, and whilst on the voyage, much conversation passed be-tween them in relation to a trade, and the defendant offered to give com-plainant one hundred dollars if the complainant would make him a pro-position to either give or take; and the said complainant refusing, the de-

fendant offered to bet fifty dollars that he would take complainant's proposition, if he would make one, &c.

McCord, the clerk, testified, that on the landing of the boat at St. Louis, (after the trip on which Greene came as passenger) the defendant came to his office and told him that complainant had proposed to sell him his interest, and that of his son-in-law, (Marshall) in the steamboat Edna, and requested him to examine the books of the boat and ascertain as near as practicable what amount of money was due said boat, what amount she owed, what amount was on hand, and the amount of profits on hand at the time. He did so, in the presence of the defendant. He then paid off the debts of the boat, and the defendant then requested the witness to "leg for him," assist him, and induce the plaintiff to sell his interest, &c., and requested him to say nothing to complainant about the amount of money then on hand. Witness stated that he did not directly or indirectly have any thing to do with the trade between complainant and defendant, and had no conversation with either party, except as stated. That he settled up the books on the 17th June, and the cash on hand, after paying all debts, was $1750 78. On that day, the boat left for her trip up the Missouri. During this voyage, complainant and defendant both called on him and requested him to draw up in writing the terms of the sale, which they informed him had been agreed on, —which he did. This witness further stated that Greene never called upon him for any information in relation to the affairs of the boat—though he had frequent conversations with him on other subjects—and that Greene can neither read nor write.

A witness for the defendant stated, that some time in the summer of 1843, he heard a conversation between complainant and defendant in St. Louis, in which complainant informed the witness that he had sold his interest in the Edna to defendant; and, when asked the price, remarked that he had sold it for "chips and whetstones,"—i. e., Platte City lots and a small sum of money;—he subsequently spoke with satisfaction of the trade, &c.

John W. Martin, another witness for the defendant, and a brother, testified that during the trip on which Greene was a passenger, he heard the defendant tell Greene to go to the office and ascertain the condition of the boat's affairs, and he saw Greene and the clerk looking over the books frequently during the passage. It was admitted that Greene could neither read nor write. At the hearing of the cause, a motion to dismiss the case, for want of jurisdiction, was made, but it was overruled.

The complainant had a decree for $450, being three-fourteenths of the

said sum of $1750, and interest from the date of the sale to the decree. Defendant appealed.

It is contended, on the part of the appellant, that the Circuit Court should have dismissed this bill, on his motion, at the hearing of the cause, on the ground that his remedy was at law, and not in equity. It is most proper that such an objection should be made by a demurrer to the bill. After the defendant has answered, and the parties have gone to the expense and trouble of procuring their testimony, and the case is submitted upon its merits, it is, to say the least, with a very bad grace, that the defendant for the first time objects to the jurisdiction of the court. In New York, it is well settled that such objections come too late, when made at the hearing. Ludlows vs. Simonds, 2 Caine Ca., 40; Underhill vs. Van Cortland, 2 Johns. Ch. Rep., 370; Rathbone vs. Warren, 10 John. Rep., 595; 4 Johns. Ch. Rep., 290. In other States, the rule established by those cases has been to some extent departed from; but we think the principle a sound one, and one which should be adopted in our practice.

The principal objection made to the decree on the merits is, that the answer is contradicted by only one witness. It is admitted that one witness cannot outweigh an answer, where the answer is clear, explicit and full; but if the answer be evasive, or not sufficiently distinct on points upon which the defendant must be presumed to be well informed, the rule has no application. Had these parties been strangers to each other, and maintained the mere relation or position of vendor and vendee, we should be disposed to doubt the propriety of the decree made by the Circuit Court. But the master of a boat is the confidential agent of the owners. He is either informed of the condition of its pecuniary affairs, or he at least has the means of easily acquiring that information. The complainant, it seems, was an unlettered man, unable either to read or write, and having a desire to sell his interest as part owner, he had a right to expect from the defendant a full disclosure of the affairs of the boat. The defendant admits that an application was made to him for this purpose by the complainant, but alleges that he referred him to the clerk. It does not appear that the complainant ever made any application to the clerk, but the testimony of the clerk and the answer of the defendant are contradictory on this point. It will be observed, however, that the defendant does not deny that he himself had all the information on this subject which the clerk had. It is true, he states that he knew as much about the affairs of the boat as men in his station usually do. What that information may be, we are unable to say, but the clerk states, and on this

point there is no conflicting testimony, that he had, at the request of the defendant, examined the books and ascertained the amount of the nett profits of the boat up to the date of the calculation, and furnished the defendant with that estimate. The statement of the defendant does not contradict this fact; he merely says that he did not believe, and does not yet believe, that the amount of cash on hand was so large as represented, but does not say what amount he conjectured to be on hand. The circumstances of his position, and the fact that he was about to trade with the complainant, must be sufficient to show that he must have informed himself to some extent of these particulars. His answer on this point is then unsatisfactory and evasive.

So in relation to the charge in the bill that the defendant asked the clerk to "leg for him," (an expression which seems to be regarded as implying some fraudulent act) the defendant denies the use of the language charged, but admits that he asked the clerk to help him in making the trade. Perhaps, under ordinary circumstances, this would be regarded as an indication of no fraudulent or improper conduct, but when we consider the relation between these parties, the immense advantages possessed by the defendant in consequence of his accurate knowledge of the condition of the affairs of the boat, which knowledge he does not pretend that he communicated to the complainant, and the incapacity of the complainant to avail himself of the privilege which he possessed in common with other part owners, of examining himself the books kept by the clerk, it is not surprising that a court of equity should not be disposed to place a very favorable construction either upon the actions or language of the defendant. It is the duty of this Court, where this confidential relation exists between parties, to look narrowly to the conduct of the agent.

This bill is not brought for the purpose of setting aside the contract between the parties, but simply for discovery of property alleged to be fraudulently concealed from the complainant, and seeks relief, it is presumed, upon the principle that the court of chancery having jurisdiction, so far as the discovery is concerned, would proceed to adjudicate the matter upon its merits, without turning the party round to a court of law. Whether this view of the jurisdiction of the court was correct, is not now examinable into. The case was tried on its merits; there was no demurrer to the bill, and it was too late to raise the question of jurisdiction at the hearing.

Judge McBRIDE concurring, the decree is affirmed.

Scott, J., *dissenting.*

In this case, I do not think the evidence sufficient to establish the complaint set up in the bill. The complainant had ample means of informing himself of the indebtedness of the boat, and the evidence showed that he availed himself of them. It is not pretended that he was deceived or misled by the clerk, on whom he called for information.