OLDHAM & BROADDUS, APPELLANTS, VS. ELIZABETH TRIMBLE, APPELLEE.

1. It has been long settled in this State, that an action on an administration bond may be instituted against a security before any indebtedness has been previously established, or any judgment obtained against the administrator: Devore vs. Pitman, 3 Mo. Rep. 130. This rule, although contrary to that which prevails in some other States, has been too long established now to be overturned.

2. No distinction can be maintained between an administrator and a curator; and although the final settlement of the accounts of a curator are regarded as prima facie correct, yet, it does not prevent the ward from filing a bill in equity, surcharging and falsifying his accounts.

3. A final settlement of a curator in the county court, being equivalent to a judgment of a court of competent jurisdiction, is a good defence to an action at law on his bond. Such settlement can only be reached by bill in equity.

4. If a defendant answer, instead of demurring to a bill, and the cause comes on to be heard upon the merits, it is too late to object to the jurisdiction of the court, on the ground that the plaintiff has adequate remedy at law, which he might have pursued: 10 Mo. Rep. 652.

APPEAL from Monroe Circuit Court, sitting in chancery.

GLOVER & CAMPBELL, for the appellants,

Rely upon the following points:
1. That the chancellor had no jurisdiction of the case, the remedy at law being perfect and of daily use.
2. The court had no power to disturb the settlements of the county court.
3. If the court had jurisdiction of the subject matter as to Oldham, there was certainly no propriety in rendering any decree against Broaddus who was not a trustee, and whose undertaking was merely collateral to that of the trustee, Oldham.
4. The testimony shows that the ward was, on a fair account taken, indebted to her guardian. The agreement not to charge her, set up in the bill, was not proved. If it had been, it ought not to have been allowed to enhance the liability of Broaddus without showing his assent.

HOWELL, for appellees,

Makes the following points:
1. Alexander R. Oldham, guardian of Elizabeth Reid, now Mrs. Trimble, having obtained said credit (i. e. credit for board, clothing, &c., against said Elizabeth,) although improperly and fraudulently, the term of the court at which said credit was obtained having passed, said county court had no jurisdiction to set aside its own judgments and revise its proceedings, and the only remedy of plaintiffs below was, in a court of chancery, which has jurisdiction to afford relief: Miller vs. Woodward and Thornton, administrators, 8 Mo. R. 169; Clark and wife vs. Henry, administrator, 9 Mo. R. 339.
2. The court of chancery, having jurisdiction over Oldham, the guardian, and the subject matter of the suit being properly cognizable in said court, and the security being a party, will go on

15

and give full relief, and not, after having given partial relief, turn the parties over to a court of law for the residue.

3. Objection cannot be made by defendants to the jurisdiction of the court after answer, and at the hearing, for the first time: 10 Mo. R. 652, Martin vs. Greene.

4. If defendants below desired to avail themselves of any supposed benefit, growing out of the allowance of the credit by the county court, they should have pleaded that matter, or set it up in their answers and relied on it.

5. The defendants, having appealed from the decree, and thereby prevented complainants from appealing, this court should, if, in its opinion, complainants below were entitled to a larger decree than they obtained, enlarge the decree of the court below, which appellees insist should have been for the full amount of the credit taken, and interest on it.

SCOTT, J., delivered the opinion of the court.

This was a bill in chancery filed in February, 1848, by John A. Trimble and Elizabeth his wife, against the appellants. The bill substantially charges. that the said Elizabeth, whose maiden name was Reid, in the year 1839 or 1840, was a minor, residing with her friends in Kentucky; that she possessed about $200 which was in the hands of her guardian. Unwilling to diminish her small patrimony, her friends charged her little or nothing for board; that about this time A. P. Oldham, a relation of hers and a resident of Monroe county in this State, came to Kentucky and proposed to her to go home with him and live in his family, as he desired her company for his wife; that he would take her to Missouri and she should be treated as one of his own children, free of any expense, so long as she pleased to remain with him, and that he would gratuitously act as her curator; that she accepted this proposition and accompanied Oldham to Missouri, in whose family she lived until some time in September, 1844, performing such duties as were appropriate for one in her situation; that in June, 1845, the said John A. Trimble and the said Elizabeth were married; that in September, 1840, by appointment of the county court of Monroe county, the said Oldham became curator and guardian of the said Elizabeth, and pursuant to law executed a bond with Jesse Oldham and Hudson Broaddus as his securities; that in the year 1840 or '41, the said Oldham received as curator, from her former guardian in Kentucky, about the sum of $201 64; that in 1842 he made a settlement of his accounts as curator and charged himself with the sum of $185, which was alleged to have beed received from her guardian in Kentucky; that in February, 1844 another settlement was made, in which he, against all his promises and assurances, fraudulently and without any vouchers charged the said Elizabeth with the sum of $185 for *"board and clothing for four years, and bringing her from Kentucky, and for horse, saddle, and bridle,*

*and for money paid in Kentucky for tuition, board, &c;"* that a part of this charge is false and the rest unsupported in right or justice; that Jesse Oldham, one of the securities in the bond of the said Wm. P. Oldham, as curator, has departed this life and his estate upon an administration has proved insolvent. It is further charged that the said settlements were not made at the times required by law, and that they are fraudulent.

The answer of Oldham admits that he brought the complainant Elizabeth from Kentucky, in the early part of the year 1839, and by her election became her guardian and curator and executed the bond as stated in the bill; that he was induced to become her curator, because it was represented here, that her guardian in Kentucky was in failing circumstances; that to obtain the money to which the said Elizabeth was entitled in Kentucky, he went thither at a time little suited to his convenience and found her guardian charged with about $200, subject to some claims amounting to about $15, which being deducted left the sum of $185, with which he charged himself as stated in the bill; that said Elizabeth lived in his family four years and was provided with board, lodging, clothing, medical attendance, &c., and was sent to the singing school at his expense; but he is not aware of her rendering any service to his family, as an equivalent therefor; that said Elizabeth's friends in Kentucky were his mother, who was a widow, and encumbered with a large family, and the complainant's step-mother, who having taken a younger sister of the complainant, to live with her, was unwilling to support said complainant; that for these reasons he brought her from Kentucky. He admits the last settlement as charged in the bill, but although it was out of time, he denies that it was fraudulent. He alleges that he has no recollection of having made any promise to the said Elizabeth, that she should live in his family free of all charge; that he may have said that he was as able to support her as any other connexion, and if she never got any thing, he should never charge her. That said complainant has received a negro girl from her father's estate. He admits the marriage of the complainant.

Broaddus, in his answer, admits that he was security in the bond of Oldham as curator.

No notice is taken of the cross bill and answer, because the matter they contain is all involved in the original bill and answer.

John A. Trimble, one of the complaints having died, the cause stood in the name of Elizabeth his wife.

Several witnesses were examined, whose depositions sustained the averments in the complainants bill. Elizabeth Reid was about fourteen

---

Oldham & Broaddus vs. Trimble.

---

years of age when she left Kentucky, and lived with Oldham between four and five years. Oldham induced her to believe, that she would live with him free of expense. The complainant was residing in Kentucky with her aunt, when she left for Missouri, and was not charged with board, and Oldham said to her that he was as able to support her as any of the connexions. Oldham had several small children and his wife was in delicate health. There were a negro man and woman and a girl nearly grown, in the possession of Oldham. The complainant performed in the family all the services usual for a young lady in her condition of life: she was well treated and decently clothed. One witness testified that Oldham told complainant she never should be charged unless she received something. After paying a sum of money she did receive a small negro girl. Oldham gave complainant a horse, which not suiting her, was exchanged for another of Oldham's horses worth forty dollars. The horse received in exchange was by him sent to the lower country and sold, but his value never accounted for. The complainant's board and clothing were worth from $65 to $70 per annum, had she rendered no services in the family. In 1844 or 1845, Oldham became embarrassed and was finally sold out.

The court rendered a verdict for the complainant for the sum of $85, from which the defendants appealed to this court. It has been long settled in this State, that an action on an administration bond may be instituted against a security before any indebtedness has been previously established or any judgment obtained against the administrator: Devore vs. Pitman, 3 Mo. Rep. 130. This rule, although contrary to that which prevails in some other States, has been too long established now to be overturned. No distinction can be maintained between an administrator and a curator. In the case before us a settlement of the curator's accounts had been made and it appears that he had disposed of and accounted for all of his ward's estate. This settlement had the sanction of the county court, and was *prima facie* correct. But although a final settlement of the accounts of a curator may be made in the county court, yet that settlement will not prevent the ward from filing a bill in equity, surcharging and falsifying his accounts. In the case of Clark and wife vs. Henry's administrator, 9 Mo. Rep. 339, it was held, that after the final settlement of an administration account, a bill in equity might be filed for the purpose of overhauling the settlement and showing that the administrator had committed a devastavit or fraud in the management of the estate entrusted to his care. If the settlement of the accounts of administrators are subject to the revision of courts

of equity, when appeals from those settlements are allowed by law, it would seem that such revision is much more required in the case of curators from whose settlements the law appears to have provided no appeal.

If an action of law had been instituted on the bond the settlement in the county court might have been interposed as a defense, it being equivalent to a judgment of a court of competent jurisdiction. The complainant was then driven to his bill in equity. There is no obstacle in enforcing the liability of the curator in this form of procedure. The only difficulty is as to the security. The penalty of the bond prescribed a limit to his responsibility. Whatever form of remedy may be adopted it is clear, that he cannot be subjected to the payment of a sum exceeding the penalty of the bond. But even if the surety was not subject to the mode of proceeding which has been employed in this cause, yet, as the parties had answered, and the cause had been tried on its merits, and all the evidence had been heared, it was too late for the first time to raise the question of jurisdiction as to the parties. This court has repeatedly held, that if a defendant answer instead of demurring to the bill, and the cause comes on to be heard upon the merits, it is too late to object to the jurisdiction of the court, on the ground that the plaintiff has adequate remedy at law which he might have pursued: Martin vs. Greene, 10 Mo. Rep. 652.

On the merits, the case is clearly with the complainant. From the evidence, there can be no doubt, but that the defendant Oldham induced the complainant to believe that she should live with him free of expense. She was living in a family were she was not charged with board. He induced her to leave that family and reside with him, saying, that he was as able to support her as any of the connexions. If she was not to have been supported gratiutiously, it does not appear, but that the services rendered by her were an equivalent for her maintainance. If Oldham had intended from the first to charge the complainant with the expenses incurred in bringing her to Missouri, why did he not have them allowed at his first settlement, as they were then due? The charge for the horse is manifestly so unjust, that it is of itself sufficient to stamp the whole account with suspicions. The defendant Oldham gave complainant a horse, which she afterwards exchanged with him for another. The horse given in exchange was sold by the defendant and its value never accounted for. Because he, without the consent of the complainant sent her horse to the south and sacrificed him, he cannot deprive her of his worth in Missouri. It may well be supposed that she was charged with the value of the horse, as esti-

---

mated here at the time of the sale. It is very strange, that a court, intrusted with superintending control over the care and management of the estate of minors, should allow a charge in the form of that which is made against the complainant in this case. Here is a lumping charge for *board and clothing, five years and bringing her from Kentucky and for horse, saddle and bridle and for money paid in Kentucky for tuition,* &c., amounting to $185. There is no other specification of the items; no statement of the sum charged for each item nor any reference to anything which throws any light on the subject. There is even an &c., and what is included in that we are left to conjecture. No person in his individual capacity would pay such an account. It is a little remarkable, that the charge against the complainant should precisely correspond, in amount, with the sum with which he was charged. It is plain, from all the circumstances, that the making of an account against the complainant was an after-thought, else it would never have been put in the form in which it was presented to the court.

Judge Gamble concurring, the decree will be affirmed.

Judge Ryland, absent.