THE STATE TO USE OF GARESCHÉ v. SLEVIN *et al.*, *Appellants.*

1. **Guardian and Ward:** SUIT BY WARD ON BOND OF GUARDIAN: PRACTICE : PARTIES.  A ward who has attained his majority can maintain a suit against the sureties on his guardian's bond without making such guardian a party, and before final settlement has been made by the guardian and the latter's liability thereby ascertained.

2. ———— : ———— : ————.  The remedy given a ward by Revised Statutes, section 2612, is cumulative and not exclusive ; he may or may not avail himself of it ; it does not deny him the right of suit on the guardian's bond ; but he can only resort to such remedy when the guardian has been ordered to pay on final settlement.  (R. S. secs. 235, 236).

3. ———— : ———— : ————.   The fact that a guardian is a non-resident of the state, irrespective of another consideration, will authorize a suit, in the first instance, against the sureties on his official bond.

4. ———— : NEGLIGENCE OF GUARDIAN: PRACTICE.  Whether a guardian has been negligent and reckless in loaning the moneys of his ward and taking security for the same is a question of fact, to be determined from the evidence, under proper instructions.

5. ——— : ———.  Where a guardian acted in good faith and with ordinary care and prudence in loaning the moneys of his ward, and fully believed that the security accepted by him was ample and sufficient to secure the loan, then he and his sureties are not responsible for any loss which may have been occasioned by such loan.

6. ——— : ———.  Where land accepted by a guardian as security for a loan of his ward's money was sufficient to properly secure the same at the time it was taken, the guardian and his securities will not be responsible for any loss, although the property afterward depreciated in value, and, upon a sale, did not realize enough to pay the loan.

7. ——— : MAINTENANCE OF WARD : LIABILITY OF ESTATE.  Where a guardian takes his ward and maintains him as a member of his family, without any intention of charging for his support, he cannot afterward be allowed out of the ward's estate for such support.

*Appeal from St. Louis City Circuit Court.*—HON. AMOS M. THAYER, Judge.

AFFIRMED.

*Eugene C. Slevin* and *Alex. J. P. Garesché* for appellants.

(1)  It was error to permit the dismissal of the suit as to John F. Slevin, the principal in the bond, for the reasons :  (*a*) That the execution must issue first against the property of the principal in the bond, and only against the surety in the event of there not being sufficient property of the principal whereon to levy the amount. *Vartie v. Underwood,* 18 Barb. 551 ; Baylies on Guaranty and Suretyship, sec. 306 ; R. S., 1879, secs. 587, 2612, 235, 236, 288.  (*b*) Because it deprived the sureties of their right of judgment upon motion against the principal.  R. S., sec. 3904.  (*c*) Because the contract of a surety is merely accessory and collateral to that of his principal, and he cannot be subjected to recourse as a principal debtor.  *Com. v. Wenrick,* 8 Watts (Pa.)

159; *Com. v. Evans*, 1 Watts (Pa.) 438; *Hendry v. Clardy*, 8 Florida, 77; *Bank v. Kingsley*, 2 Douglass, 403; Pothier on Obligation of Surety, sec. 365, p. 228. (2) The guardian, in lending the moneys of his ward, acted in good faith, and with the reasonable care and prudence required of a fiduciary, hence is not responsible for any loss. Schouler's Exr's and Admr's, sec. 323; *Davis v. Harsman*, 21 Grattan, 200; *State v. Meagher*, 44 Mo. 362; *Fudge v. Durn*, 51 Mo. 267. (3) Credit should have been given for the maintenance of the ward. 1 Chitty on Contracts [11 Ed.] 11; *Miller v. Condon*, 14 Gray, 116; *Dawes v. Shed*, 15 Mass. 10; *Armstrong's Heirs v. Walkup*, 9 Grattan, 375. (4) Sureties are not liable for a preëxisting debt of the guardian to his ward. *McCarty v. Frazer*, 62 Mo. 266; *Thompson v. McGregor*, 81 N. Y. 598; *Hyatt v. Grover*, 40 Mich. 229; *Spurlock v. Earles*, 8 Baxter (Tenn.) 437.

*J. L. Hornsby* for respondent.

(1) An action on a guardian's bond may be instituted against a surety before any indebtedness has been previously established, or judgment obtained against the guardian. *Devore v. Pitman*, 3 Mo. 127 (side p. 179); *Oldham v. Trimble*, 15 Mo. 228; *State ex rel. v. Roper*, 82 Mo. 57; *State ex rel. v. Rosswaag*, 3 Mo. App. 81; *Flach v. Fasen*, 3 Mo. App. 561; Baylies on Sureties and Guarantors (Ed. 1884.) 304; *Domestic Sewing Machine Co. v. Saylor*, 86 Pa. St. 287. The removal of a guardian is equivalent to an order to pay over. *State ex rel. v. Finny*, 9 Mo. 227. The fact of the non-residence of a guardian, irrespective of any other consideration, warrants suit in the first instance against his sureties on his official bond. *Commonwealth v. Wenrick*, 8 Watts [Pa.] 169; Brandt on Suretyship and Guaranty [Ed. 1878] sec. 495; *Philips v. Riley*, 27 Mo. 386. The statutory remedy against a principal debtor in

favor of sureties does not embrace sureties upon a guardian's bond. *State ex rel. v. Darby*, 11 Mo. App. 528. (2) The second point in appellants' brief suggests merely a question of fact. (3) It has been very clearly and positively decided in this state that that which was originally intended as a gratuity, cannot subsequently be turned into a charge. *Folger v. Heidel*, 60 Mo. 284; *In re Simonds*, 4 Mo. App. 598; *State ex rel. v. Preetorius*, 11 Mo. App. 593; *McDowell v. Caldwell*, 2 McCord Chan. 57; *Hays v. McConnell*, 42 Ind. 285.; *Reddle v. Reddle*, 5 Richardson Eq. 35. Nor can such charge be made by the sureties of a guardian. *Griffin v. Burd*, 22 Gratt. 73. Such intention to give a gratuity can be established by inference as well as by promise. *Crosby v. Crosby*, 1 S. C. 348. (4) Even had this money of the ward not been collected by John F. Slevin as guardian, yet it is the well-settled doctrine that the sureties shall be held responsible for a preëxisting debt of a guardian, to the same extent and on the same principle as for other debts due the estate—that is, to the extent that, with due and proper diligence, the same could have been collected if it had been due from a third party, and the guardian had been required to collect the same. *In re Wood*, 71 Mo. 626; *Eaton v. Walsh*, 42 Mo. 272; *Ridgway v. Kerfoot*, 22 Mo. App. 665; *State ex rel. v. Jones*, 14 Mo. App. 595; *Taylor v. Hite*, 61 Mo. 142; *Spurlock v. Earls*, 8 Baxter (Tenn.) 442; *Bond v. Lockwood*, 33 Ill. 213; Schouler Dom. Rel. *470, *474; Baylies on Sureties and Guarantors, 176.

NORTON, C. J.—This suit was instituted in the circuit court of the city of St. Louis to recover damages occasioned by an alleged breach of a guardian's bond. It is averred in the petition that, in 1871, John F. Slevin was appointed by the probate court of St. Louis county guardian of the person and estate of Louis Garesché, then a minor about fifteen years old; that said Slevin

made and executed his bond, with defendants, Charles Slevin and Alexander J. P. Garesché, as sureties, with the condition that if the said John F. Slevin should well, truly, and faithfully discharge the duties of his office as guardian, according to law, the bond should be void, otherwise to be in full force. As a breach of the bond, it is averred that on the first of June, 1875, said guardian loaned to John Slevin and T. E. Slevin, four thousand dollars, of the estate of his ward, Louis Garesché, took their note therefor, payable two years after date, and to secure the same took from them a mortgage on a tract of land in Williamson county, Illinois, particularly described in the petition. It is further averred that, at the same time, said guardian also lent to the same parties, on the same security, forty-five hundred dollars, belonging to the estate of Adèle Garesché, who was also his ward ; that he made report of these loans to the probate court, and represented these lands, taken as security for said loans, to be worth ten thousand dollars, when, in fact, the land was only worth two thousand dollars.

It is further averred that plaintiff and said Adéle Garesché, in 1882, filed a bill to foreclose said mortgage ; that it was foreclosed and the land was sold for forty-six hundred dollars, and that said plaintiff's share of the proceeds of said sale was two thousand dollars. It is also averred that said John and T. E. Slevin became bankrupts in 1876; that John has died, leaving no estate, and said T. E. Slevin was insolvent. It is then averred that said investment of plaintiff's money was reckless and injudicious, and that, by reason thereof, he has been damaged four thousand dollars.

The answer of defendants, Charles Slevin and Garesché, admits the appointment of John F. Slevin as guardian, and the execution of the bond sued on, as alleged ; admits that said Slevin loaned four thousand

dollars of his ward's money and secured the same by mortgage, as stated in the petition, but denies that the loan was made to John and Thomas E. Slevin, and avers that it was made to J. & J. Slevin & Sons, of Cincinnati. The answer denies that the investment of the ward's money was reckless or injudicious, and avers that, at the time of said loan, the said guardian truthfully and correctly represented the value of said land to the probate court, and that the security received was ample and sufficient to secure said investment, and that in making the loan the guardian acted in good faith. It is further claimed that there having been no final settlement, credit should be given the guardian for the ward's board and lodging from March, 1871, to the date of his majority, and that it was reasonably worth twenty-five dollars per month. The matters set up in the answer were denied by replication.

It appearing that defendant, John Slevin, was not served with process, the suit was dismissed as to him, and the trial was proceeded with against the securities, in which plaintiff obtained judgment; from which defendants have appealed and seek a reversal on various grounds, the first of which, stripped of all redundancy, is, that a ward who has obtained his majority cannot maintain a suit against the securities on the bond of the guardian, without making such guardian a party, nor until final settlement has been made by the guardian, and his liability thereby ascertained. It is mutually conceded in the briefs of counsel that the above contention cannot be sustained, under the rulings of this court in the cases of *Devore v. Pitman*, 3 Mo. 180, and *Oldham v. Trimble*, 15 Mo. 225. In the first of these cases, it is said that an administration bond is joint and several, and may be put in suit by any person aggrieved against one or all of the obligors, and that the surety may be sued as soon as the principal commits a breach of the condition of the bond, and that no convic-

tion, by verdict or judgment, is necessary. In the second case it is said: "It has been long settled in this state that an action on an administration bond may be instituted against a security before any indebtedness has been previously established, or any judgment obtained against the administrator. This rule, though contrary to that which has been established in some other states, has been too long established, now to be overturned. No distinction can be maintained between an administrator and curator."

It is, however, insisted that the act of 1883 (Acts, 1883, p. 23), which requires executors and administrators to make final settlement after the expiration of two years from the date of the publication of notice of the grant of letters, and provides a method of procedure against them in the event of their failure to make such settlement, has modified or changed the rule announced in the above cases. We cannot perceive that it has any such effect. In the said cases, it is not given as a reason for the rule, that the law, at that time, made no provision for forcing an administrator to make final settlement, but the reason given is, that an administrator's bond is a joint and several obligation, and being such, suit can be brought against any one or all the obligors.

Nor is the question, as is contended, affected by Revised Statutes, section 2612, which provides that if a guardian fails to pay to his ward, money ordered on final settlement to be paid to him, the same proceedings may be had against his guardian and sureties, as are authorized when an executor or administrator fails, when ordered, to pay demands against an estate. When an executor or administrator fails to pay demands against the estate, which he has been ordered to pay, it is provided by Revised Statutes, section 235, if he fail to pay when payment is demanded, the clerk of the court, on application of the creditor, and being satisfied that such demand has been made, shall issue execution against the

property, goods, chattels, and real estate of such execu-
tor or administrator. And by section 236, it is provided
that if any such execution be returned unsatisfied, the
creditor may sue out a *scire facias* against any one or
more of the securities of such executor or administrator,
referring to the bond, the order of payment, the execu-
tion and return, and requiring such security to show
cause why judgment should not be rendered against him
for the amount ordered to be paid, and still unsatisfied.

These sections of the statute simply provide a
summary remedy for enforcing the payment of a de-
mand ordered to be paid, which the party interested
may or may not avail himself of, but they in no way
deny to him the right of suit on the bond. The remedy
thus provided is cumulative, but not exclusive, and, by
the terms of section 2612, can only be resorted to by
the ward when on final settlement the guardian has been
ordered to pay. Besides this, the fact stated in plain-
tiff's abstract, that it appeared in evidence that Slevin,
the guardian, was a non-resident of the state, which fact
was not disputed in the oral argument, nor is it dis-
puted in the abstract or brief of counsel, authorized a
suit on the bond against the sureties even in the states
where the principal is ordinarily held to be a necessary
party. Brandt on Suretyship, sec. 495; *Commonwealth
v. Wenrick*, 8 Watts [Pa.] 159.

The question as to whether the guardian was or
was not reckless and injudicious in making the loan and
in taking the mortgage to secure it was one of fact, to
be determined by the evidence under proper instructions,
and this question, we think, was fairly submitted to the
jury in the following instructions:

"1. If John Slevin, guardian, in loaning the
moneys of his ward, acted in good faith and with ordi-
nary care and prudence, and if he fully believed that
the security accepted by him was ample and sufficient to
secure said loan, then he and his sureties are in no wise

responsible for any loss which may have been occasioned by such loan."

" 2. If at the time the mortgage read in evidence was executed, the land accepted by the guardian as security was sufficient properly to secure the same, then, although the same may have since depreciated in value, and though, upon a sale of the security, it did not realize enough to pay the said loan, the said John F. Slevin and his securities are not responsible for any loss that may have been occasioned to relator by such depreciation or sale."

As the answer admits that the four thousand dollars in question loaned by the guardian belonged to the estate of the ward, no question of the non-liability of the securities for a preëxisting debt of the guardian can arise in the case.

It is further insisted that, under the evidence, defendants should have been allowed for the board and lodging of plaintiff by the guardian. The only evidence upon that subject was that of the guardian himself, who testified that his wife, then deceased, was a sister of Mrs. Garesché, the mother of the plaintiff, and that, before Mrs. Garesché died, she requested him to take care of her children after her death. He further testified as follows: "Accordingly, after her death, they came to my house and lived there during their minority; the relator herein lived with me from March 6, 1871, until his majority, about five years and four months. I never charged him, or any of my wards, for their board or lodging. I think twenty-five dollars per month would be a very reasonable charge for said board and lodging. I did not intend to charge them for their board and lodging, for I thought I was sufficiently able to provide for them as for my own children, but I never told them I would not charge anything. Had I supposed my sureties would ever have to pay my indebtedness to the relator, I would certainly have charged him for his board

and lodging. The Garesché children while living with me were treated as members of my family."

The only question arising on this evidence is as to the correctness of the following instruction, given by the court of its own motion :

"3. If Louis Garesché boarded and lodged with his guardian, John F. Slevin, during the time of such guardianship, from ———— to ————, then, whatever would be a reasonable compensation for the same, the securities of said John F. Slevin, on said guardian's bond, are entitled to as a credit in this cause ; provided, said guardian furnished said board, intending, at the time, to charge therefor, and if he did not so intend, he cannot, at this time, claim such credit, nor can his sureties make such claim."

This instruction, under the evidence, was fully warranted by the case of *Folger v. Heidel*, 60 Mo. 288, in which, it is said : "It is not believed that a case can be found where a parent, or any one standing *in loco parentis*, has been allowed to charge an infant where he took it and raised it as a member of his family, without any intention or design of charging for its support."

Finding nothing in the record justifying an interference with the judgment, it is hereby affirmed. All concur, except Judge Sherwood, who did not sit nor participate in the decision of the case.