INTERNATIONAL BANK OF ST. LOUIS, Appellant, *v.* GERMAN BANK *et al.*, Interpleaders, Respondents.

### February 28, 1877.

1. A certificate of deposit which does not contain the words "for value received" is not a negotiable instrument under the statute, but title to it will pass by indorsement and delivery, or by delivery, in case of an indorsement in blank, yet the transferee takes it subject to all equities.

2. Where one indorses in blank, and delivers, as collateral, to a bank a non-negotiable chose in action, upon the face of which is indorsed a notice that it is subject to certain claims, the indorser is not estopped to assert his title as against the purchaser or pledgee thereof, who has taken it from the bank for a valuable consideration and without actual notice.

3. Where the cashier of a bank gives a fraudulent and worthless check, and takes up collateral securities therewith, such transaction effects no legal re-transfer of the securities.

APPEAL from St. Louis Circuit Court.
*Reversed and judgment.*

*F. & E. L. Gottschalk,* for appellant, cited : Odell *v.* Gray, 15 Mo. 337 ; Paulette *v.* Brown, 40 Mo. 52 ; Commercial Bank *v.* Kortright, 22 Wend. 348 ; McNeil *v.* Tenth National Bank, 46 N. Y. 325 ; Moore *v.* Metropolitan National Bank, 55 N. Y. 41 ; Lowenstein *v.* Knapp, 2 Mo. App. 159 ; Woody *v.* Seventh National Bank, 3 C. L. J., No. 51, p. 824.

*T. A. & H. M. Post,* for respondents, cited : Shaw *v.* M. E. Church, 8 Metc. 226, and cases cited ; Bailey *v.* Smock, 61 Mo. 219 ; Jaccard *v.* Anderson, 32 Mo. 188 ; Lindsay *v.* Parsons, 34 Mo. 422 ; Austin *v.* Blue, 6 Mo. 265 ; Thomson *v.* Roatcap, 27 Mo. 285 ; Hasbrouck *v.* Vandervoort, 4 Sandf. 74 ; Wilson *v.* Little, 2 Comst. 433 ; Homes *v.* Crane, 2 Pick. 610 ; Jarvis *v.* Rogers, 15 Mass. 376 ; Lowenstein *v.* Knapp, 2 Mo. App. 159 ; Hays *v.* Riddle, 1 Sandf. 248.

BAKEWELL, J., delivered the opinion of the court.

It appears from the pleadings and evidence in this case that the International Bank, the German Bank, and the People's Savings Institution, of which John H. Fisse is assignee, are all banking corporations whose place of business is St. Louis.

On August 11, 1874, Herman Boecke, one of the interpleaders, deposited with the German Bank $3,000, for which he received the following certificate :

" $3,000.

"*German Bank, St. Louis, Mo., Aug. 11, 1874.*

" Herman Boecke has deposited in this bank three thousand dollars, payable to the order of himself six months after date, with six per cent. interest for the time stated, on the return of this certificate properly indorsed.

" No. 10,301.    FRANK N. DIETZ, *Cashier.*"

The following words were written across the face, in red ink :

" The certificate is subject to any claim for collection, or

any other fees arising out of disbursement of the legacy of which this money is part proceeds."

On August 24, 1874, before the maturity of this certificate, it was indorsed in blank by Boecke, and delivered to the People's Savings Institution for safe-keeping, and as collateral security for two loans made by said institution to Boecke, for which he had given his two notes for $300 and $150, respectively, of which no part is paid; and the notes are now held by Fisse, as assignee of the People's Savings Institution.

In January, 1875, before the maturity of the certificate, Edmund Wuerpel, then cashier of the People's Savings, on behalf of that institution and acting within the scope of his authority, obtained a loan of $5,000 from plaintiff, the International Bank, for which, as cashier, he executed a note maturing on Monday, February 1, 1875. As security for this note, Wuerpel delivered to plaintiff collaterals to the amount of $6,000, which he represented as the property of the People's Savings. Amongst these collaterals was the certificate of the German Bank to Boecke, which, with the other collaterals, was pinned to the note of Wuerpel.

On Saturday, January 30, 1875, Wuerpel came to the bank of plaintiff, in the afternoon, and represented to the teller of plaintiff that he wished to pay the note maturing on Monday; and then handed to the teller his (Wuerpel's) check on the People's Savings Institution for $4,500, the balance then due on the loan. This check was certified by Wuerpel, as cashier, and on receiving it the teller of plaintiff delivered to Wuerpel the note, with the collaterals attached.

On the next day (Sunday) Wuerpel absconded. On Monday plaintiff's teller went to the People's Savings Institution to present the check, during banking-hours, and found the doors closed.

The People's Savings Institution then made an assign-

ment to Fisse, who took possession of its assets on February 1, 1875, and found that Wuerpel, before his flight, had given checks to various persons for a large amount, exceeding the money on hand.

Plaintiff commenced replevin against the People's Savings Institution for the certificate of deposit, and thus obtained possession of it again.

Plaintiff took the certificate from Wuerpel as collateral, in good faith, relying on his statement that it was the property of the bank. On the other collaterals plaintiff collected $2,040.26, and presented the certified check to the assignee for allowance; it was allowed, and a dividend declared of 2½ per cent., which plaintiff has not collected.

The plaintiff commenced the present suit against the German Bank, on the certificate of deposit, on March 11, 1875.

The answer admits the issue of the certificate, but says that the amount due on it is claimed by Boecke, and by Fisse, assignee of the People's Savings; and asks that they may be required to interplead.

Boecke interpleads, and claims that he owns the certificate, and that it should be paid to him; and afterwards files an assignment of his claim to Christine Boecke.

Fisse interpleads, and claims that the People's Savings Institution should be first paid by the German Bank the amount due on the two notes executed by Boecke.

Plaintiff filed a reply to the interplea of Boecke, denying generally all statements inconsistent with the averments of the petition.

Afterwards the German Bank paid into court $3,050, and was discharged.

On the trial the plaintiff asked the following instructions, which were refused:

"1. The court declares the law of this case to be that, if the People's Savings Institution, by Edmund Wuerpel, its cashier, on 3d January, fraudulently, or by fraudulent

representation, obtained possession of the certificate of deposit, and that plaintiff afterwards replevied said certificate out of the hands of the People's Savings, then the People's Savings Institution acquired no right to, or interest in, said certificate by reason of such possession, nor did plaintiff lose any right or interest therein, but he is entitled to the same rights that he would have had if the certificate had remained in his possession continuously up to the time of bringing this suit.

" 2. The court declares the law of this case to be as follows : It being admitted by all the parties that the certificate of deposit on which suit is brought was indorsed in blank by Boecke, the payee, and by him delivered before maturity to the People's Savings Institution, the effect of such indorsement and delivery was equivalent to an acknowledgment on the part of Boecke that he had parted with the ownership of said certificate, and he is estopped from setting up any claim to, or interest in, the same, as against the rights of the plaintiff, provided plaintiff took the certificate from the People's Savings Institution as a collateral for a loan, before the maturity, without any notice of Boecke's ownership or claim, but upon the representations of Wuerpel, the cashier, that the People's Savings Institution was the true and lawful owner of the certificate.

" 3. If the court, sitting as a jury, believes from the evidence that the certificate of deposit on which this suit is brought was indorsed by Herman Boecke, the payee, before its maturity, and that said certificate, after said indorsement and before maturity, was assigned to plaintiff as collateral security for a loan obtained upon the faith and credit of that and other securities ; that plaintiff took said certificate in good faith, without any notice of any defect in the title thereof, or of any equities existing against the payment of the same ; and if the court further believes from the evidence that the said loan has not been wholly paid, then the court will find for the plaintiff.

" 4. If the court should find for the plaintiff, the amount

of its recovery should be the loan of $5,000, less the payment of $500, and the amounts already collected on the collaterals."

The following declarations of law were given at the instance of the interpleader Boecke:

" 1. The court declares the law to be that, if the plaintiff took a check for the amount of the note for which the certificate of deposit in controversy was given as collateral, and voluntarily surrendered up the note and certificate, then plaintiff has no claim upon Herman Boecke's equity of redemption to said certificate of deposit, even although the money was never paid on said check.

" 2. The court declares the law to be that the instrument sued on in this case is not a negotiable instrument, and that, therefore, it is subject, in the hands of plaintiff, to all the defenses which would exist against the People's Savings Institution, and plaintiff would acquire no other or greater title or claim to said instrument than the said People's Savings Institution had therein when transferred by it to the plaintiff.

" 3. The court declares the law to be that the certificate of deposit in controversy is not a negotiable promissory note, and plaintiff, the International Bank, must therefore show that it paid value for said certificate, even though it obtained said certificate before maturity."

The court, sitting as a jury, found that out of the fund deposited by the German Bank the two notes of Boecke shall be paid to Fisse, the balance to Boecke, and nothing to plaintiff; and judgment was entered accordingly. Plaintiff appeals.

1. The certificate of deposit which Boecke received from the German Bank, and pledged to the People's Savings Institution as collateral security for his two promissory notes, was not a negotiable instrument under our statute. The words " for value received " are omitted, and these words are essential to impart the quality of negotiability to

mercantile paper in this State. *Baily* v. *Smock*, 61 Mo. 219. Title to the certificate might be passed by indorsement and delivery, or by delivery alone, in case of an indorsement in blank, but the transferee would take subject to all equities, and in the case at bar the International Bank got no other or better title to the certificate than that of the People's Savings Institution.

It is claimed by appellant that Boecke, having transferred this certificate by indorsement in blank, and having thus put it in the power of the People's Savings Institution to represent itself as the absolute owner of the certificate, is estopped to deny the title of those to whom this certificate was transferred, and who took it in good faith from the People's Savings Institution for a valuable consideration.

It is true that it has been held that a *bona-fide* purchaser for value of a non-negotiable *chose in action*, from one upon whom the owner has by assignment conferred the apparent absolute ownership, where the purchase is made upon the faith of such apparent ownership, obtains a valid title against the real owner, who is estopped to assert title in hostility thereto.

In *Thompson* v. *Toland*, 48 Cal. 99, it is decided that, if the owner of mining stocks allows his broker, who purchases for him, to hold the certificates in such a manner that they will pass by delivery on the indorsement of the broker, with nothing on the face of the certificates to indicate that the real owner of the stock has any interest in the stock, a purchaser in good faith from the broker, without notice of the rights of the real owner, acquires a good title to the same, even if the broker, by a contract with his principal, had no right to sell or hypothecate the stocks without the consent of his principal. It is said by the learned judge delivering the opinion of the court in that case that, in California, mining stocks properly indorsed pass by delivery almost as currently as bank-notes, and that, if the true owner places them in the hands of another, on some secret

trust, etc., between them, without anything on the face of the certificates to show his ownership, he, and not an innocent purchaser or pledgee, must bear the loss.

So, in *McNeal* v. *Tenth National Bank,* a case recently decided in New York (46 N. Y. 330), the plaintiff left with his broker a certificate of certain shares of stock having indorsed thereon the form of an assignment expressed to be made " for value received," and an irrevocable power of attorney to make all necessary transfers; the name of the transferee and attorney and the date were left blank; this document was signed by the plaintiff.  The brokers pledged the stock without authority, with other securities, to secure an advance of $45,000.  It was held the defendant was entitled to hold the stock for the full amount remaining unpaid; Allen, J., dissenting.

These are judicial opinions entitled to great respect, but they have not the effect which counsel for plaintiff would seem to attribute to them.  They are plainly distinguishable from the case at bar.  It cannot be said of certificates of deposit with us, as Judge Crockett says of certificates of mining stock in California, that they pass current almost as bank-notes, or were ever intended to do so; nor did Boecke, in the case before us, give a power of attorney authorizing the sale of his certificate, as was done in the New York case. There are cases in which, from motives of policy, to promote the currency of certain securities, to prevent fraud, or to aid the vigilant against the careless, the party to whom the transfer is made is allowed to claim a greater interest than was possessed by the other; but it is for the one claiming the benefit of an exemption to show that it exists in a particular case.

The certificate of deposit pledged to the People's Savings Institution was not negotiable, and bore on its face marks sufficient to put the most careless purchaser on his guard, and to warn the general public that its transfer might be no

transfer of the fund for which it was given. The bank issuing it had written across its face a notice that it was subject to certain claims, as to the character or extent of which nothing could be known without further inquiry. And cases in which choses in action have been put in the hands of brokers under circumstances from which the business community might reasonably infer a full right to sell are not parallel to the case before us.

The assignee of a *chose in action* not negotiable at common law acquires an equitable title only. We do not see why the mouth of one who pledges a non-negotiable promissory note shall be closed against asserting, as against an innocent purchaser from the pledgee of the same paper, that it was not the pledgee's to sell. This would be to destroy to that extent the marked distinction between paper negotiable and that which has no negotiable quality. What had Boecke said or done, or what had he neglected, at the proper time, to do or say, that he should be estopped to assert the truth of this transaction? He had given no express authority to the holder of this paper to pledge or sell it for his own benefit; it was not an article of merchandise placed in the hands of one selling that class of goods, in such a way that the world might easily believe that the possessor had it to sell or pledge; it was a paper which said upon its face, If you take me, you take me at your own risk, and are bound by any equities existing between the original parties or between the indorser and the indorsee. Suppose the fees on the face of the certificate spoken of, for the disbursement of the legacy of which the certificate purported to represent only part of the proceeds, had swallowed up the face of the claim; will it be contended that plaintiff could have collected anything whatever from the maker of the certificate? The carelessness was that of plaintiff, who should have inquired, before taking non-negotiable paper, as to the title of the holder; and the loss, in the present

case, was occasioned by the imprudence of plaintiff rather than by any misconduct on the part of Boecke, the real owner of the note.

An estoppel *in pais* arises when something is done or said which cannot be contradicted without fraud on the part of the person who has spoken or acted, and injury to those who have been influenced by his acts or words. We do not think that the indorsement in blank, and delivery to a bank, of a note non-negotiable upon its face is any declaration on the part of the indorser from which persons dealing with the bank holding the paper have a right to conclude that it has the right to dispose of such a note for its own benefit, as absolute owner of the same. We do not think, therefore, that the indorser is estopped to assert his title as against a purchaser or pledgee of the note who has taken it from the bank for a valuable consideration without actual notice.

But the People's Savings Institution is clearly not entitled to be paid by the German Bank the two notes of Boecke. It loaned to Boecke $450, took the certificate of deposit in question as security for that sum, and then pledged that certificate to plaintiff as security for $5,000 which it received from plaintiff, and which it has not returned. Whatever interest the People's Savings Institution actually had in this certificate has passed to plaintiff ; and the rights of the parties are not at all changed by the fraudulent trick of the cashier of the People's Savings Institution in giving to plaintiff a check known to be worthless and receiving back the certificate. This was a shameless fraud, and effected no retransfer of the certificate. Whatever rights the People's Savings Institution had to the certificate are now owned by plaintiff, and the Circuit Court erred in refusing the instruction of plaintiff on this poin , and giving that asked by Boecke. For this reason the judgment of the court below must be reversed.

But, as all the facts are before us, it is useless to remand the case, and it is our duty to give such judgment here as

should have been given by the court below.    The amount
of $3,050 having been paid into the court below in full of
the amount due by the German Bank on the certificate, the
judgment will be that, out of the fund so deposited, there be
paid to plaintiff the amount due on the two notes of Boecke on
January 6, 1876, and the remainder be paid to Christine
Boecke, to whom it appears that Herman Boecke has as-
signed his claim.

All the judges concur.