FIRST NATIONAL BANK OF ST. CHARLES, Respondent, v. MARY C. HUNT, EXECUTRIX, Appellant.

**St. Louis Court of Appeals, March 22, 1887.**

1. WITNESSES, INCOMPETENCY.—One of the original parties to a contract being dead, the other party thereto is incompetent as a witness in his own favor, regardless of whether he is a party to the suit.

2. NEGOTIABLE INSTRUMENTS—REQUIREMENTS OF.—A promissory note is negotiable by statute only, and, to make it negotiable, and to entitle parties thereto to notice of dishonor, it must contain all the statutory requirements.

3. ——— EVIDENCE—ORAL TESTIMONY TO VARY WRITTEN CONTRACT. A note without date of payment is payable on demand, after delivery, and oral evidence is inadmissible to show a different date of payment.

APPEAL from the St. Louis County Circuit Court, W. W. EDWARDS, Judge.

*Reversed and remanded with directions.*

NAPTON & FROST, for the appellant: A promissory note may be negotiable without expressing the time when it is payable. *Hall v. Toby*, 1 Cent. Rep. 54; 1 Daniel Neg. Inst. [2 Ed.] 72. In argument below, the plaintiff insisted that these notes were non-negotiable. If that is so, the remedy must be exhausted against Shaw before proceeding against Hunt. *Samstag v. Cowley*, 64 Mo. 476; *Graham v. Ringo*, 67 Mo. 324. The notes are presumed to be dated when made and delivered. 1 Daniel Neg. Inst. [2 Ed.] 72, and authorities cited; Benj. Chalm. Dig. 22. The contemporaneous oral agreement between Hunt and Shaw varies the purport of the two notes as they stand, and his testimony should have been excluded. *Gardner v. Matthews*, 11 Mo. App. 269; s. c., 81 Mo. 627.

C. DAUDT, for the respondent: Ever since *Looker v. Davis* (47 Mo. 140), the rule has been that the statute excludes only a witness, who is both a party to the contract, and a party to the suit. *Meier v. Thiemann*, 15 Mo. App. 309, 310; *Pritchett v. Reynolds*, 21 Mo. 677. The only way in which errors can be corrected, if the law is wrongfully decided, or a misapplication of the law to the facts is made, by the lower court, is to ask declarations of law, or instructions, in order that the appellate court may see upon what theory the court below proceeded. *Easley v. Elliott*, 43 Mo. 289; *Harrison v. Bartlett*, 51 Mo. 170; *Harrington v. Minor*, 80 Mo. 270. The evidence justified the finding; but this court will not undertake to weigh the evidence. *Easley v. Elliott*, 43 Mo. 289; *Wilson v. Railroad*, 46 Mo. 36; *Weiland v. Lemuel*, 47 Mo. 322.

ROMBAUER, J., delivered the opinion of the court.

One Shaw made two promissory notes, in words and figures as follows:

"$1,000.00. ST. LOUIS, MO., ............, 188..

"Four months after date I promise to pay Chas. L. Hunt, or order, one thousand and $\frac{00}{100}$ dollars, for value received, with interest from maturity at the rate of ten per centum per annum, negotiable and payable, without discount or defalcation.

'JOHN S. SHAW.''

"$........  ........................, 188..

"After date .... promise to pay to the order of Chas. L. Hunt fifteen hundred and $\frac{00}{100}$ dollars, for value received, negotiable and payable, without defalcation or discount, at the ..... , with interest at the rate of .. per cent. per annum from .......

"JOHN S. SHAW.''

Both notes were endorsed by Chas. L. Hunt, for the

accommodation of John S. Shaw, the maker, and were delivered by Shaw to the plaintiff bank, as collateral to his own notes for corresponding amounts, which the bank had discounted before, on October 24, 1883, and May 15, 1884, respectively.

These principal notes of Shaw were renewed from time to time, the last renewals being on the second and twenty-seventh days of January, respectively, in the year 1885. On the fifth and thirtieth days of May, 1885, the notes thus renewed, maturing, were dishonored and protested for non-payment. The notes endorsed by Hunt were never protested, nor does it appear that he was ever notified of the dishonor of the principal notes.

Charles L. Hunt died, but the record fails to show the date of his death. The plaintiff thereupon, November 13, 1885, exhibited these two collateral notes, as demands against his estate, in the probate court. The demands being rejected there, it took an appeal to the circuit court, where the two demands were allowed against the estate, the note of one thousand dollars, with interest at the rate of ten per cent. per annum, and the note of fifteen hundred dollars, with interest at the rate of six per cent. per annum, from June 28, 1886, the date of the allowance, whereupon the executrix appeals.

The cause was tried by the court sitting as a jury. No instructions were asked by either party, and none were given by the court of its own motion, and the only points presented on this appeal are, whether the court admitted illegal testimony against the defendant's objections, and whether the finding and judgment are supported by substantial evidence.

Upon the trial of the cause, John S. Shaw, the maker, was called as a witness for the plaintiff, and was permitted to testify against the specific objections of the defendant, to the following facts, among others : " That Hunt had been in the habit of endorsing commercial paper for his accommodation ; that the notes thus en-

dorsed were renewed from time to time, until at the date
when the notes in controversy were endorsed ; that, at
that time Hunt, himself, had suggested that it would save
annoyance if the date of these notes was left blank, so as
not to compel him to endorse renewal notes every three
or four months, and, thereupon, he gave to the witness
these collateral notes, leaving the date blank, with the
understanding that the notes should stand good, until
Shaw's indebtedness to the bank was paid.

The witness further stated that Hunt gave him the
note for one thousand dollars, thus endorsed, in May,
1884, and the fifteen hundred dollar note some three or
four months thereafter.

The cashier of the plaintiff testified, as above stated,
that these collateral notes were taken by the bank
October 24, 1883, and May 15, 1884 ; whichever of these
two statements states the facts correctly does not mate-
rially affect the result.

The appellant contends that Shaw was an incompe-
tent witness, because Hunt is dead, and that his testi-
mony was incompetent for the further reason, that it
was offered for the purpose of altering a written con-
tract by oral evidence ; that, rejecting his testimony,
there can be no recovery, because it stands admitted that
no presentment for payment was made of the collateral
notes, at the date of their maturity, and that Hunt had
no legal notice of their dishonor.

This court has held in *Meier v. Thiemann* (15 Mo.
App. 309, 310), following *Looker v. Davis* (47 Mo. 140),
that in order to exclude one of the parties to a contract
from testifying as a witness, where the other party to the
contract is. dead, the person thus excluded must be a
party to the record, as well as to the contract.

This ruling was reversed by the supreme court on
appeal (90 Mo. 433). The supreme court holds, that a
party to a contract is incompetent as a witness *in his own
favor*, in such a case, regardless of the fact whether or no
he is a party to the record. Applying the law, as thus

modified, to the facts of this case, would still leave Shaw a competent witness for the plaintiff. He was, in no sense, testifying in his own favor. His primary liability on the notes, as maker, remained the same, whether the bank succeeded in this suit or not. The objection to the competency of the witness, was, therefore, properly overruled.

Passing to the question as to whether the testimony of Shaw was competent, as varying a written instrument, this inquiry arises. Did that testimony, in any manner, vary the contract as written, so as to substitute another and different contract, for the one reduced by the parties to writing?

Both the notes exhibited are negotiable, promissory notes. It is settled in this state, that a promissory note, to make it negotiable in like manner as an inland bill of exchange, must be payable to the payee therein named, or order, or bearer, and expressed to be for value received. Rev. Stat., sect. 547; *Austin v. Blue*, 6 Mo. 265; *Bailey v. Smock*, 61 Mo. 213, 218; *Taylor v. Newman*, 77 Mo. 263; *Bank v. Bank*, 3 Mo. App. 367. It is only by force of the statute that notes are negotiable in this state. Both these notes, however, contain all the statutory requirements to make them negotiable, and in other respects comply with the requisites of paper negotiable by the law merchant. Neither of them being dated, they became payable according to recognized legal rules, the first, four months after delivery, and the second, on demand after delivery. Dan. Neg. Inst. sects. 83, 88; *Collins v. Trotter*, 81 Mo. 275. It is conceded that the notes were delivered, respectively, either October 24, 1883, and May 15, 1884, or in May, 1884, and August or September, 1884. Whichever of these dates is the correct one, is, as above stated, immaterial; because, it is further conceded, that no notice of their dishonor was given, at any time, to Chas. L. Hunt, or his executrix, assuming even that the institution of a suit against Shaw was a sufficient demand of the note, payable on demand, after delivery.

The date of the delivery of the notes could be shown, and was shown by oral testimony. To that extent, Shaw's testimony was competent, and Shaw was a competent witness. But oral testimony was inadmissible to show a different contract as to the intended maturity of the notes, because the date of delivery, being once established, the legal effect of the written contract became as above stated, and could not be varied by oral evidence. *Thompson v. Ketchum,* 8 Johns. 189 ; *Gardner v. Matthews,* 11 Mo. App. 274 and 275, and cases cited ; *James v. Clough, ante* p. 147.

Such being the law, and such being the undisputed facts, it necessarily results that there can be no recovery on either of the notes exhibited. That no instructions were asked on the trial in the lower court is immaterial, because, where the facts stand admitted, the judgment is a mere conclusion of law, and instructions have no office to perform.

The judgment is reversed, and the cause remanded, with directions to the circuit court to enter judgment for the defendant, and to certify the same, as provided by statute, to the probate court of St. Louis county. All the judges concur.