STATE OF MISSOURI to the use of BERNARD HERMANN, Respondent, v. CHAS. F. MILLER, Executor of Estate of AUGUSTUS MILLER, Deceased, Appellant.

**St. Louis Court of Appeals, February 24, 1891.**

1. **Witnesses:** GUARDIAN AND WARD. A guardian is not an incompetent witness to prove his own default in an action on his official bond, instituted by his ward against a surety on that bond.

2. **Guardian and Ward:** SUFFICIENCY OF EVIDENCE TO CHARGE THE GUARDIAN. A policy of life insurance was by its terms payable to the wife of the assured, but she was appointed guardian of one of her sons, and in her annual settlements debited herself with one-fourth of the proceeds of the policy, the son being entitled to one-fourth of the estate of the assured. *Held* that the evidence was sufficient to warrant the submission of the issue to the jury, whether or not the ward had acquired a right to the amount thus debited, but did not warrant a peremptory instruction as to the existence of that right.

3. ———: EFFECT AND REVIEW OF ANNUAL SETTLEMENTS. Annual settlements of a guardian are not conclusive, but are subject to review at the final settlement, or, if there is no final settlement, then in a suit upon the guardian's bond.

4. ———: ALLOWANCE FOR MAINTENANCE. In an action by a ward upon the bond of his guardian, a surety upon the bond may avail himself of the right of the guardian to claim a credit for the board and maintenance of the ward, if the circumstances would have authorized an allowance therefor in the probate court. Such allowance cannot be claimed, however, for board and maintenance, furnished by the natural guardian without any intention or design of charging therefor.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Alfred Gfeller*, for appellant.

*John R. Myers* and *J. M. Holmes*, for respondent.

ROMBAUER, P. J.—This is an action upon a guardian's bond, brought to the use of a former ward against the executor of one of the securities on the bond.

The petition after setting out the bond, which is in the statutory form and purports to be executed by Elizabeth Hermann as principal, and by the defendant's testator as one of the securities, makes the following averment: "At the date of the execution of said bond, the said guardian had in her possession the sum of $948.25, belonging to the plaintiff; that thereafter and from time to time the said guardian made settlements as guardian of plaintiff in the St. Louis probate court; that on the —— day of —— 1874, the said Elizabeth Hermann married Philip Beck, since deceased, and, on the fifteenth day of December, 1874, made her settlement as guardian of plaintiff, showing a balance in her hands, due plaintiff, of $788.35." The petition then states that the ward is of age, that the guardian never accounted to him, or anyone for him, for this money, but converted the same to her own use.

The defendant's answer contained a general denial, an averment that the ward resided with his guardian, who was his mother, from December, 1874, to November, 1888, and that a reasonable compensation for his board and lodging was $20 per month; that the guardian expended $500 for his wearing apparel during these years and paid him $1,000 in money, and had thus fully accounted for all moneys which she was bound to pay by the terms of the bond sued upon. The affirmative allegations in the answer were controverted by reply.

The cause was tried before a jury. The plaintiff called the guardian, his mother, and proved by her the execution of the bond, her marriage to Beck in 1874, her conversion of the money prior to that time, and her present insolvency. On her cross-examination she stated that she did in her two annual settlements charge $200 per year for board, lodging and medical attendance of the ward, and that that was a reasonable charge.

She also stated that the plaintiff boarded and lodged with her from the year 1873 until he arrived at his majority, and that she furnished him with board, lodging and clothing, but that she never intended to charge him for that.

The plaintiff then read in evidence an insurance policy on his father's life for $5,000, payable by its terms to Elizabeth Hermann, in case she survived her husband, and the check of the insurance company to Mrs. Hermann for $4,436.16. The evidence concedes that the money with which the guardian charged herself in the probate court, as money belonging to this plaintiff, was one-fourth of the money thus paid to her by the insurance company, presumably because the plaintiff was supposed to be a beneficiary of that policy, as one of the four distributees of his father's estate.

The plaintiff also gave in evidence the two annual settlements made by the guardian in the probate court. The first contains this sole item of debit: "To amount received of life insurance company, $1,108.75." Both settlements show credits claimed and allowed of $200 each for board, lodging and medical attendance furnished the ward. These and other small expenses reduced the balance against her to $788.35 in the last settlement filed by her, which was in December, 1874, upon her marriage with Beck, and this is the balance sued for in the present action.

The defendant gave evidence tending to show that the guardian intended to charge for the board, maintenance and clothing of her ward when she made her settlements, and intended to continue these charges until this insurance money was absorbed. He also gave evidence tending to show that the guardian and her husband supported the ward until his majority, which occurred in October, 1886, schooled him, and gave him money at times. At the close of the evidence the court instructed the jury to find for the plaintiff for the amount shown to be due according to the last annual

settlement filed by the guardian, with six-per-cent. interest from the date of that settlement to the date of the trial, which the jury did.

The defendant assigns for error that the evidence of the guardian was improperly admitted ; that the whole evidence does not warrant any finding for the plaintiff ; and, even if it did, the peremptory instruction of the court to the jury so to find was wholly unwarranted.

The first assignment rests on a misconception of our statute concerning witnesses. A person is an incompetent witness *in his own favor* when the other party to the contract or cause of action is dead, but he is always a competent witness against himself. *First National Bank v. Hunt*, 25 Mo. App. 170. Here the testimony of the guardian was in no sense in her own favor, nor was she the *other party* to the contract or cause of action within the meaning of the statute. The second branch of this assignment, namely, that the guardian, as principal, could not prove his own default as against the surety is equally untenable. While *declarations* of a principal are not admissible against his surety, unless made in the transaction of the business for which the surety is bound, yet the principal remains a competent witness for or against his surety, unless disqualified on other grounds.

The second assignment must also be ruled against the defendant. It appeared by the insurance policy offered in evidence by the plaintiff that the money paid on account of it to Mrs. Hermann was *prima facie* her property, but on the other hand it appeared by the settlement filed by her in the probate court that one-fourth of that amount was *prima facie* the ward's property. These settlements were written admissions made by her in the transaction of business for which the surety was bound, and hence clearly admissible against him. It does not appear whether the ward's mother, the payee of this policy, paid one-fourth of its proceeds to him as a gift, or because she thought such was the intention

of her husband, or whether she paid it to him because she thought that he was legally entitled to it as a distributee of the estate. It suffices that her admissions are legal evidence of the fact that she paid the money to him, or to herself as guardian for him ( which is in effect the same ), because he was in some way entitled to it. There was, therefore, sufficient evidence to take the case to the jury on the main fact upon which the defendant's liability rests, namely, that money of the ward came into her possession as his guardian, and that she failed to account for it to the plaintiff, but converted it to her own use.

At the same time it is well settled in this state that annual settlements of administrators and of guardians and curators of minors are not conclusive. They are subject to review and correction at the final settlement. *State to use v. Jones*, 89 Mo. 470, and cases cited. They are *prima facie* evidence against the guardian and his sureties. *State to use v. Roeper*, 82 Mo. 57. Where no final settlement is ever made, they are subject to review and correction in the suit brought against the administrator or guardian, because the final settlement as far as it affects the plaintiff is made in effect in that suit. There is no question of limitation in this case. The statute commences to run in favor of the guardian, as soon as the ward becomes of age (*State v. Willi*, 46 Mo. 236 ), and, where there has been no change of guardian, it cannot run against the guardian from an earlier date. The admissions of the guardian, before they have been merged in a judgment, furnish *prima facie* evidence against him and his securities, which may be used in support of an action, but they in no sense furnish an independent cause of action. The cause of action in this case is the conversion of the ward's money by the guardian. If it should appear that the ward never had any money, it necessarily results that the guardian could not convert it. Now in this case the evidence offered by the plaintiff himself is conflicting as to the

ward's title to the money sued for, and hence it was error to instruct the jury peremptorily to find that the money was that of the ward and that the guardian had converted it.

We believe it was likewise error to give this instruction, in view of the evidence tending to show that the guardian had supported the ward, schooled him and clothed him from the time he was seven years of age, and claimed and was allowed in the probate court compensation for his maintenance for two years at least, and had avowed her intention to continue such charges until the ward's funds were exhausted. An able argument is presented on this branch of the case by the counsel for the respondent, claiming that allowances of this kind must be made in the probate court, and cannot be claimed by the guardian or his sureties in a suit upon the bond. The cases cited do not bear out any such view. "When and under what circumstances an allowance will be made for the support or maintenance of the ward," says WAGNER, J., in *Folger v. Heidel*, 60 Mo. 287, " depends very much on the facts of each particular case, and it is not denied that in certain cases it may be made *as well for past as for future maintenance.*" *Guion v. Guion's Administrator*, 16 Mo. 48; *Gillett v. Camp*, 27 Mo. 541 ; *Otte v. Becton*, 55 Mo. 99. But it is not believed that a case can be found, where a parent, or anyone standing in *loco parentis*, has been allowed to charge an infant, when he raised it as a member of his family, *without any intention or design of charging for its support.* In *State to use v. Slevin*, 93 Mo. 253, the action was upon a guardian's bond, and yet both the trial court and the supreme court impliedly recognized the right of the guardian to charge for the maintenance of the ward, even though standing in *loco parentis*, where the relative circumstances of the parties justify it, and *where there was an intention to obtain recompense out of the ward's estate at the time of furnishing the maintenance.* See *State to use v.*

*Martin*, 18 Mo. App. 468.   A case of that kind must be distinguished from the case, where one, standing in *loco parentis*, seeks to obtain recompense, not out of the ward's estate under his care, but by an independent action against the ward after the latter becomes of age, as upon an implied promise.   That the latter action cannot be maintained clearly appears by the able argument and opinion of Judge SCOTT in *Gillett v. Camp*, *supra*. The case must also be distinguished from one where there never was any intention to charge for such expenses when incurred.

It is argued that, in the case at bar, the guardian herself testified that she had no intention to make such a charge, but she was a witness for the plaintiff, testifying in his behalf and interest, and her evidence was opposed to her acts.   As she herself testified, that the allowance obtained by her of $200 a year was a reasonable allowance, the argument that there was no evidence of value to go to the jury is untenable.   She positively testifies that during the year 1875, the year immediately succeeding her last settlement, the ward lived with her, and she furnished him with board and clothing and lodging.   As she herself, according to her own evidence, had nothing at the time, and her ward, in contemplation of law, had this $788.35, provided his claim that the money was his is correct, the circumstances of the parties were certainly such, as would justify a reasonable allowance in favor of the guardian out of the ward's estate for maintenance, if the intention to charge existed.   The security on the bond can in this case insist on all credits, to which the guardian is entitled, and under the circumstances the question, whether the security was entitled to a credit for maintenance furnished the ward, could not be withdrawn from the consideration of the jury, unless we could hold that the defendant was precluded on that point by the testimony of an adverse witness, who was called by the plaintiff, which we take not to be the law.   As the

case upon a new trial may, both upon the pleadings and evidence, present wholly different features, we deem it sufficient to indicate our views of the law as above stated.

The judgment is reversed, and the cause remanded for further proceedings in conformity with this opinion. All the judges concur.