THE STATE OF MISSOURI to the use of S. W. COLLIN, Appellant, v. Z. F. GILMORE *et al.*, Respondents.

Kansas City Court of Appeals, May 30, 1892.

1. **Guardian and Curator:** CONVERSION: NEGLIGENCE OF THIRD PARTY. If the guardian converts the fiduciary funds to his own use, the sureties on his bond are liable, notwithstanding a succeeding guardian, or the administrator of the converting guardian, might, by some act of omission or commission, be also liable.

2. ————: ADJUSTMENT OF ACCOUNTS: INTEREST: COMMISSIONS. In making adjustment of the accounts of a converting guardian compounded interest should be charged until his death and six per cent. thence on, and he should be allowed no commissions.

*Appeal from the Andrew Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

*D. Rea* and *Thos. H. Ensor*, for appellant.

*William Heren*, for respondents.

ELLISON, J.—Relator's father was his guardian and curator up to the father's death. Crowley then became relator's guardian, and Leeper became the administrator of the father's estate, and after a time succeeded Crowley as guardian. This action is against the sureties on the guardian's bond given by the father, and resulted in favor of the sureties in the circuit court.

The contention of relator's counsel is that the father misappropriated or converted the money in his hands. The theory of defendants is, as shown by proceedings at the trial, that, notwithstanding such conversion or misappropriation, the administrator, Leeper, who took charge of the father's estate, by proper diligence could have saved relator's money. Relator is unquestionably right and defendants wrong. The facts necessary to state were substantially these: Relator became entitled to the money as a legatee. It was placed in his father's hands as guardian and used, partly at least, in the father's private business, though the father regularly and properly charged himself with the proper amount and interest in his settlements. The testimony does not disclose what became of the money. Leeper, the administrator, testified that the only notes he found among the deceased's papers were one on Samuel B. Hayzlett for $1,033.33, date June 10, 1876, due four years after date without interest; one on Lewis Eaton for $65; one on Samuel B. Hayzlett for $36.40, dated May, 1878; one on F. M. Ammon for $10; one on Wm. Cardwell for $60, and one on J. McCorkill, $11.10, and that all of these notes were in the father's individual name; that he took them to be assets of the estate and so inventoried them.

Crowley, the guardian of the relator, who succeeded to the guardianship on the father's death, presented the amount shown to be due relator by the father's settlement to the probate court for allowance against the estate of the father, and it was properly allowed. Afterwards Leeper, as administrator, made several payments on this allowance, but not sufficient to extinguish it, as the estate was insolvent, and he only paid *pro rata.*

Defendant contends that Leeper knew, or had sufficient knowledge to charge him with notice, that the notes above mentioned, especially the one for $1,033.33, due in four years without interest, were given for this relator's money, and that he ought not to have inventoried them as administrator, as assets of the estate. That they should have been turned over to Crowley, the succeeding guardian. We need not inquire whether Leeper or Crowley did their duty towards the fund, or to this relator. If the original guardian converted the fiduciary funds to his own use, the sureties on his bond are liable, notwithstanding a succeeding guardian, or the administrator of the original guardian's estate, might, by some act of omission or commission, be also liable. *State ex rel. v. Bilby, ante,* p. 162. It is difficult to see how the fact (if it be a fact), that the money might afterwards have been saved by others, can heal a breach of the bond already made.

From the testimony presented to us there appears to be no question that the father converted the money to his own use. That of Hayzlett, the payor of two of the notes above mentioned, may be summarized by what he stated on cross-examination, viz.: "Luette Collin and I traded a great deal. I and Luette Collin had a settlement of individual and all other matters between us at the time I gave the note to him for

$1,033.33, due four years after date, without interest. I was at the time in bankruptcy, and we made a compromise; part of it related to matteis in which Collin was surety for me, and I gave him the note for $1,033.33, and he said he could report it to the probate court as the boy's money, and thereby carry me." The finding should be for relator in whatever sum may appear as a balance, if any, after allowing credits for payments made.

In making the adjustment, ten-per-cent. interest compounded should be charged, up to the death of the father, and six-per-cent. simple interest thence on. This mode of computation falls within the rule declared in *State ex rel. v. Richardson*, 29 Mo. App. 595. Nothing should be allowed for commission to the guardian. *Ibid*. The judgment will be reversed and cause remanded, with directions to proceed as herein indicated. All concur.