IN THE MATTER OF FINAL SETTLEMENT OF FRANK TUCKER, Curator of the Estate of LENA and MINNIE WILLIAMS, Minors; J. T. WILLIAMS, Respondent, v. W. F. REED et al., Appellants.

St. Louis Court of Appeals, March 29, 1898.

1. **Probate Court:** JURISDICTION AS TO. Matters within the exclusive jurisdiction of probate courts, their orders and judgments, are entitled to the same intendments and presumptions as are accorded to the judgments of courts of general jurisdiction.

2. **Allowance for Support of Minor to One in Loco Parentis.** It is well settled law in this state that if the claimant for an allowance for the support of a minor stands in the position of *loco parentis* and the minor has been reared as a member of the family, the allowance will not be made unless there was an intention or purpose formed at the time to make such charge.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

J. G. TRIMBLE and GEORGE ROBERTSON for appellants.

This is simply an examination of the final settlement of Frank Tucker as curator of Lena and Minnie Williams. It is not a final settlement in compliance with section 5329, Revised Statutes 1889, as no notice of the same was given to the successor, J. T. Williams, as is provided by that section, as in case of revocation

of curatorship.    Neither is it a proceeding against the curator and his sureties, as provided in sections 5330 and .5331, Revised. Statutes 1889, as no citation was issued for the sureties.    It is, therefore, questionable if either the probate court or circuit court had any jurisdiction of the matter submitted to either.    It does not appear that any order had been made upon the curator, Tucker, to pay over.    It is simply an inquiry to ascertain what Tucker had in his hands at the time of his final settlement.    Where the authority for this is does not appear disconnected from the proceedings prescribed in the sections cited above.    The settlement of Tucker in the probate court is void, consequently the judgment of the circuit court is void.    State ex rel. Hyslop v. Bilby, 50 Mo. App. 162; Murphy v. Murphy, 2 Mo. App. 156.

W. H. MORROW and N. W. MORROW for respondents.

Although Tucker failed to comply with the requirements of section 5329, Revised Statutes 1889, the settlement made was made under the order of the probate court for and as a final settlement.    The appellants so treated it by appealing therefrom, and respondent only had a right to complain of a noncompliance with the conditions in said section imposed and was at liberty to waive, which he did, the notice and other formalities by said section required.    The action of appellants in appealing from the amount found to be due the wards by Tucker was voluntary, and the proceedings had in the circuit court was at their instance.    Coleman v. Farrar, 112 Mo. 54.    Any irregularity in the proceedings of the probate court, said court having jurisdiction in the matter, as it unquestionably had, was a matter of no concern to respondent, as it was

the province of the circuit court to determine the cause anew without regarding any error, defect or other imperfection in the proceedings of the probate court. Secs. 5335 and 292, R. S. 1889; Garrison v. Lyle, 38 Mo. App. 558; Estate of Whitson v. Whitson, 89 Mo. 58. Neither of the cases cited by appellants on this point, gives, as respondent conceives, any support to their peculiar contention as to want of jurisdictional authority in the probate and circuit courts to determine the matter at issue.

BIGGS, J.—In 1885 Frank Tucker was appointed curator of the estates of Lena and Minnie Williams, minors. W. F. Reed and J. Mc. D. Trimble, the appellants herein, were the sureties on his official bond. Tucker made his first settlement in July, 1889. In that settlement he charged himself with $1,292.86, the amount received by him from a former guardian, and which composed the entire estates of his wards. In 1882 Tucker married the mother of his wards. After his appointment as curator the children continued to live with him and his wife. In the settlement mentioned Tucker took credit for $800 for the maintenance of the children by him. He also took credit for the amount of premiums paid by him on life insurance policies, which had, prior to his appointment as curator, been issued on the life of the mother of his wards and for their benefit. The balance as shown by that settlement, was $594.06. In 1892 the probate court removed Tucker as curator and appointed in his place J. T. Williams, the respondent herein. Subsequent to his removal, to wit, on the fourteenth day of March, 1892, Tucker presented to the probate court a final settlement of his accounts as curator. In this settlement he charged back the amount of insurance premiums for which he had taken credit in his

previous settlement, and he also debited himself with an overcharge of $414 on account of maintenance, and for which he had likewise taken credit in his first settlement.

The final settlement showed a balance due the wards of $1,557.51. The settlement was approved by the probate court. From the order approving the settlement Reed and Trimble, the sureties of Tucker, appealed to the circuit court. In the circuit court they contended that Tucker should be allowed a reasonable amount for maintaining the children, and that he should also have credit for the value of the insurance policies, or at least for the amount of the premiums paid by him on the insurance policies. On a trial *de novo* the circuit court restated the account with annual rests. It charged Tucker with ten per cent interest on the amount of money in his hands to May 11, 1891. After that time and to the date of the final settlement in the probate court he was charged with eight per cent interest. After the final settlement he was charged at the rate of six per cent interest. The court allowed Tucker credit for the amount of premiums paid by him on the insurance policies, but it refused to allow anything for maintenance. From the judgment approving this settlement the sureties have appealed to this court.

The first contention of the appellants is that the order of the probate court approving what purports to be a final settlement of the accounts of Tucker as guardian should be set aside, for the reason that the record of the judgment and proceedings in the probate court does not show that Williams, the incoming curator, had notice of the intended settlement as required by statute (R. S. 1889, sec. 5329), and that therefore the settlement can only be treated as an annual exhibit of the account. The trouble with this contention is that the appellants assume that the record of the proceed-

ings in the probate court must affirmatively show all jurisdictional facts, whereas it has been decided in many cases in this state that as to matters within their exclusive jurisdiction the judgments and orders of probate courts are entitled to the same intendments and presumptions as are accorded to the judgments of courts of general jurisdiction. Johnson v. Beasley, 65 Mo. 250; Henry v. McKerlie, 78 Mo. 416; Cambden v. Plain, 91 Mo. 117; Rattman v. Schmucker, 94 Mo. 139; Murphy v. DeFrance, 105 Mo. 53; Macey v. Stark, 116 Mo. 481; State ex rel. Hyslop v. Bilby, 50 Mo. App. 162. The doctrine of these cases is that such judgments are not open to collateral attack, and that upon appeals from them or proceedings to vacate them, their regularity will be presumed, until the contrary is shown. In the case at bar the record of the probate court is silent as to notice to Williams, and the appellants made no attempt to show that the settlement was made without notice. In the absence of such testimony the conclusive presumption is that the notice was given.

PROBATE court: jurisdiction.

The objection is made to the action of the circuit court in charging Tucker with interest at the highest legal rate, with annual rests. There was no error in this. It was conceded that Tucker used the money belonging to his wards in his private business. State ex rel. v. Richardson, 29 Mo. App. 595; Collins v. Gilmore, 50 Mo. App. 353.

The chief complaint of the appellants is that the circuit court erred in refusing to credit Tucker with a reasonable sum for boarding and clothing his wards during the time they lived with him. The evidence tended to show these facts. At the time of the marriage of Tucker (in 1882) he was living in the city of Mexico, and was clerking in the store of Reed, the appellant herein, who was then the curator of the estates

of the children.   Mrs. Tucker at and for some years prior to her second marriage was also an employee in Reed's store.   The only property owned by her was a residence in the city.   Prior to her marriage she kept house and supported herself and children out of her salary.   After the marriage the family continued to live in Mrs. Tucker's house.   Tucker continued in the employment of Reed, and Mrs. Tucker devoted her entire time to her household duties.   In May, 1885, Reed resigned the curatorship and Tucker was appointed in his place.   In payment of the amount due the children from Reed, Tucker accepted from Reed a stock of boots and shoes at their reasonable value.   With this stock of goods as a basis, Tucker opened a boot and shoe store in the city of Mexico.   He continued the business for two and a half or three years, when he failed.   At the time the business was started Tucker had no money of his own, and during its continuation his only means of living came out of the business.

At the time of the failure the only property saved from the wreck was an equity or redemption in a farm. After the failure Tucker moved onto the farm, where he continued to live until the farm was sold under the mortgage.   Afterward he moved back to Mexico and operated a mill for a short time.   In 1889 he went to the city of Louisiana to live, where his wife kept a boarding house, and he started another boot and shoe store on money borrowed on the credit of his wife's homestead.   In two or three months this venture also proved a failure.   During the time the family lived in Mexico the children were neatly dressed, they took music and dancing lessons, a piano was bought for their use, they were sent to Hardin college for a short time, the family lived comfortably, and a servant was hired to do the housework the greater part of the time. It is also in evidence that during the time Tucker paid

for the groceries consumed by the family, and that from 1885 to 1889 Mrs. Tucker earned no money herself; that she had no income, and that she owned no property except her residence. After the removal to Louisiana the preponderance of the evidence shows that the family was supported from the profits of the hotel business which was conducted by Mrs. Tucker. During the time the family lived in Louisiana and for some time before leaving Mexico, Tucker became dissipated. The foregoing state of facts is, in our opinion, well supported by a preponderance of the evidence. Now let us apply the law to the facts. It is well settled by the decisions in this state that if the claimant for an allowance for the support of a minor stands in the position of *loco parentis* and the minor has been reared as a member of the family, the allowance will not be made unless there was an intention or purpose formed at the time to make such a charge. State ex rel. v. Slevin, 93 Mo. 253; State ex rel. v. Miller, 44 Mo. App. 118; Folger v. Heidel, 60 Mo. 287; Guion v. Guion, 16 Mo. 48; Gillett v. Camp, 27 Mo. 541; Otte v. Becton, 55 Mo. 99. During the time that Tucker was engaged in the boot and shoe business in the city of Mexico and during the time the family lived on the farm, there can be no question under the evidence that Tucker boarded and clothed his wards. During that time Mrs. Tucker could not have contributed anything toward their maintenance, for the reason that the evidence shows that she was not engaged in any business, and that she had no property except her house. Does the preponderance of the evidence show that Tucker intended to charge his wards for their support is the remaining question? It may be remarked here that we must review this case as chancellors. The final settlement

*Allowance for the support of minor to one in loco parentis.*

of an administrator or guardian is analogous to the taking of an account before a master in chancery, and all proceedings growing out of such settlements must be determined and reviewed according to the course of procedure which obtains in chancery cases. In re Estate Meeker, 45 Mo. App. 186. The testimony of Tucker was not taken at the trial. The only evidence bearing on his intention to charge for the support of the children was the credit of $800 for maintenance in his settlement of 1889. In the cross-examination of Reed the attorney of respondent attempted to prove by him that this charge was made at his (Reed's) suggestion, but Reed denied it, and there was proof to the contrary. The taking of this credit and its allowance by the probate court certainly made a *prima facie* case for the sureties on the question of the intention to charge. Besides in the circumstances it is not reasonable that Tucker intended not to charge, for he had no estate whatever of his own.

Again, the equities of the sureties are very strong. For three or four years Tucker paid for food and clothes for his wards out of their own estate, whereby they received the direct benefit of at least a portion of their patrimony. Tucker is insolvent and the entire estate has been consumed by bad management and in expenses of living. It is not just that the appellants should be made to account for the entire estate. Hence we conclude that under the evidence, as preserved in this record, the circuit court should have allowed a reasonable sum for boarding and also clothing the children during the time Tucker was in the shoe business in Mexico and while the family lived on the farm. After that time the evidence leads us to the conclusion that the children were supported by the mother.

The testimony of Tucker may be secured on another trial. Its importance is obvious. For this

reason we will not direct a judgment, but will remand the cause for another trial. Judgment reversed and cause remanded.

All concur. Judge BLAND in the result.